IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARC WATERMAN,<br><br>    Plaintiff,<br><br>v.<br><br>ADAMAS PHARMACEUTICALS INC., DAVID L. MAHONEY, NEIL F. MCFARLANE, MICHAEL F. BIGHAM, MARTHA J. DEMSKI, WILLIAM ERICSON, JOHN MACPHEE, SPYROS PAPAPETROPOULOS, and ANNA RICHO,<br><br>    Defendants. | Case No. _____<br><br><u>JURY TRIAL DEMANDED</u><br><br><u>**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**</u> |

Plaintiff, by his attorneys, for this complaint against defendants, alleges the following upon personal knowledge with respect to himself, and upon information and belief based upon the investigation of counsel as to all other allegations herein:

**NATURE OF ACTION**

1. On October 10, 2021, Adamas Pharmaceuticals, Inc. ("Adamas" or the "Company") entered into an agreement and plan of merger (the "Merger Agreement") with Supernus Pharmaceuticals, Inc. ("Parent") and Supernus Reef, Inc. ("Purchaser") (the "Proposed Merger").

2. Under the terms of the Merger Agreement, Purchaser commenced a tender offer (the "Tender Offer") to purchase Adamas' outstanding common stock for $8.10 in cash per share. The Tender Offer is set to expire on November 24, 2021.

3. On October 26, 2021, defendants filed a recommendation statement (the "Recommendation Statement") with the U.S. Securities and Exchange Commission (the "SEC").

4. As alleged herein, the Recommendation Statement fails to disclose material information regarding the Proposed Merger, and defendants violated Sections 14(e), 14(d), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of Adamas common stock.

9. Defendant Adamas is a Delaware corporation. Adamas' common stock is traded on the NASDAQ under the ticker symbol "ADMS."

10. Defendant David L. Mahoney is Chairman of the Board of Directors of Adamas (the "Board").

11. Defendant Neil F. McFarlane is Chief Executive Officer and a member of the Board.

12. Defendant Michael F. Bigham is a member of the Board.

13. Defendant Martha J. Demski is a member of the Board.

14. Defendant William Ericson is a member of the Board.

15. Defendant John MacPhee is a member of the Board.

16. Defendant Spyros Papapetropoulos is a member of the Board.

17. Defendant Anna Richo is a member of the Board.

18. Defendants identified in ¶¶ 10-17 are referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

19. Adamas is a company focused on growing a portfolio of therapies to address a range of neurological diseases.

20. On October 12, 2021, Adamas entered into the Merger Agreement.

21. The press release announcing the Proposed Merger provides as follows:

Supernus Pharmaceuticals, Inc. (Nasdaq: SUPN) and Adamas Pharmaceuticals, Inc. (Nasdaq: ADMS), today announced a definitive agreement for Supernus to acquire Adamas through a tender offer for $8.10 per share in cash (or an aggregate of approximately $400 million), payable at closing plus two non-tradable contingent value rights (CVR) collectively worth up to $1.00 per share in cash (or an aggregate of approximately $50 million), for a total consideration of $9.10 per share in cash (or an aggregate of approximately $450 million). The first CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI® of $150 million in any four consecutive quarters between closing and the end of 2024. The second CVR, worth $0.50 per share, is payable upon achieving net sales of GOCOVRI of $225 million in any four consecutive quarters between closing and the end of 2025. The transaction is expected to close in late fourth quarter 2021 or in early first quarter 2022.

The transaction will provide Supernus with two marketed products: GOCOVRI (amantadine) extended release capsules, the first and only U.S. Food and Drug Administration (FDA)-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy; and Osmolex ER® (amantadine) extended release tablets, approved for the treatment of Parkinson's disease and drug-induced extrapyramidal reactions in adult patients.

"This acquisition represents a significant step to further build a strong and diverse Parkinson's disease portfolio, and aligns with our focus of acquiring value-enhancing, clinically-differentiated medicines to treat CNS diseases," said Jack Khattar, President and CEO of Supernus Pharmaceuticals. "We have a proven track record of strong commercial execution, and look forward to building on GOCOVRI's growth momentum so that more patients can benefit from access to Adamas' innovative neurological therapies."

**Strategic and Financial Benefits**

Strengthens Parkinson's disease portfolio with GOCOVRI (amantadine) extended release capsules, the first and only FDA-approved medicine indicated for the treatment of both OFF and dyskinesia in patients with Parkinson's disease receiving levodopa-based therapy.

Diversifies and increases revenue base and cash flow.

Net sales of GOCOVRI were $71.2 million and $37.7 million in 2020 and for the first six months of 2021, respectively.

Combined with the acquisition of US WorldMeds CNS products in 2020, this Transaction significantly reduces the reliance on net sales of Trokendi XR®. In the first half of 2021 and on a combined proforma basis (including revenue from US WorldMeds and Adamas transactions), net sales of Trokendi XR® represent 48% of Supernus revenues down from 72% (excluding revenue from these transactions).

Potential synergies of $60 million to $80 million in year one due to strong overlap with existing infrastructure.

The acquisition is expected to be significantly accretive in 2022.

"We are pleased that Supernus recognized the value created at Adamas and firmly believe this path forward is an excellent outcome for not only our shareholders, but all our stakeholders," said Neil F. McFarlane, Chief Executive Officer of Adamas Pharmaceuticals, Inc. "With their shared commitment to helping patients affected by neurological diseases and their extensive resources, Supernus can continue to advance our mission and reach. I am extremely proud of Team Adamas for their hard work and dedication to get us to this point and am confident that partnering with Supernus will maximize the potential of our innovative therapies."

**Terms and Financing**

Under the terms of the agreement, Supernus will commence a tender offer to acquire all outstanding shares of Adamas Pharmaceuticals, Inc. for a purchase price of $8.10 per share in cash (or an aggregate of approximately $400 million) payable

at closing plus two non-tradable CVRs. All cash consideration will be funded through existing balance sheet cash.

The CVR entitles Adamas stockholders to receive up to an additional $1.00 per share in cash (or an aggregate of approximately $50 million) payable upon GOCOVRI achieving certain net sales milestones within specified periods (subject to the terms and conditions contained in a Contingent Value Rights Agreement detailing the terms of the CVRs). These milestones include (i) $0.50 per share payable if in any four consecutive quarters between closing and the end of 2024, net sales of GOCOVRI achieving $150 million, and (ii) another $0.50 per share payable if in any four consecutive quarters between closing and the end of 2025, net sales of GOCOVRI achieving $225 million. There can be no assurance any payments will be made with respect to the CVR.

**Approvals and Timing of Close**

The transaction, which has been approved by the boards of directors of both companies, is expected to close in late fourth quarter 2021 or in early first quarter 2022, subject to customary closing conditions, including receipt of required regulatory approvals and the tender of a majority of the outstanding shares of Adamas' common stock. Following the successful closing of the tender offer, Supernus will acquire any shares of Adamas that are not tendered in the tender offer through a second-step merger at the same consideration as paid in the tender offer.
. . .

**Advisors**

Jefferies LLC is acting as the exclusive financial advisor to Supernus. Lazard is acting as the exclusive financial advisor to Adamas. Saul Ewing Arnstein & Lehr LLP is serving as legal counsel and Grant Thornton is providing due diligence services to Supernus, and Cooley LLP is serving as legal counsel to Adamas.

23.     On October 26, 2021, defendants filed the Recommendation Statement, which fails to disclose material information regarding the Proposed Merger.

<u>Financial Projections</u>

24.     The Recommendation Statement fails to disclose material information regarding Adamas' financial projections, specifically: (i) the line items used to calculate the financial projections; (ii) a breakdown of the projected revenue for each of Adamas' products and pipeline candidates over the period from 2021 through 2032; (iii) the sales forecasts prepared by management of the Company taking into account information provided by management of

Supernus regarding its marketing plans for GOCOVRI; and (iv) the Company's non-probability of success-adjusted financial projections.

25. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

### Financial Analyses

26. The Recommendation Statement omits material information regarding the financial analyses conducted by Lazard. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

27. Regarding Lazard's Discounted Cash Flow Analysis, the Recommendation Statement fails to disclose: (i) the inputs and assumptions underlying the discount rates used in the analysis; (ii) the net cash; (iii) the number of fully diluted shares outstanding; and (iv) the unlevered free cash flows used in the analysis and the underlying line items.

28. Regarding Lazard's Selected Precedent Transactions Analysis, the Recommendation Statement fails to disclose: (i) the closing dates for the transactions; and (ii) the total values of the transactions.

29. Regarding Lazard's Premia Paid Analysis, the Recommendation Statement fails to disclose: (i) the observed transactions; and (ii) the premiums paid in the observed transactions.

30. Regarding Lazard's Research Analyst Price Targets analysis, the Recommendation Statement fails to disclose: (i) the observed price targets; and (ii) the sources of the observed price targets.

## COUNT I

### Claim Against Defendants for Violation of Section 14(e) of the Exchange Act

31. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

32. Section 14(e) of the Exchange Act states:

It shall be unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading . . . in connection with any tender offer or request or invitation for tenders[.]

33. Defendants disseminated the misleading Recommendation Statement, which contained statements that, in violation of Section 14(e) of the Exchange Act, in light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not misleading.

34. The Recommendation Statement was prepared, reviewed, and/or disseminated by defendants.

35. The Recommendation Statement misrepresented and/or omitted material facts in connection with the Proposed Transaction as set forth above.

36. By virtue of their positions within the Company and/or roles in the process and the preparation of the Recommendation Statement, defendants were aware of this information and their duty to disclose this information in the Recommendation Statement.

37. The omissions in the Recommendation Statement are material in that a reasonable shareholder will consider them important in deciding whether to tender their shares.

38. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available.

39. Defendants knowingly or with deliberate recklessness omitted the material

information identified above in the Recommendation Statement, causing statements therein to be materially incomplete and misleading.

40. Accordingly, defendants violated Section 14(e) of the Exchange Act.

41. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

## COUNT II

### Claim Against Defendants for Violation of 14(d) of the Exchange Act

42. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

43. Section 14(d)(4) of the Exchange Act states:

Any solicitation or recommendation to the holders of such a security to accept or reject a tender offer or request or invitation for tenders shall be made in accordance with such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

44. Rule 14d-9(d) states:

Any solicitation or recommendation to holders of a class of securities referred to in section 14(d)(1) of the Act with respect to a tender offer for such securities shall include the name of the person making such solicitation or recommendation and the information required by Items 1 through 8 of Schedule 14D-9 (§ 240.14d-101) or a fair and adequate summary thereof[.]

45. Item 8 requires that directors must "furnish such additional information, if any, as may be necessary to make the required statements, in light of the circumstances under which they are made, not materially misleading."

46. The Recommendation Statement violates Section 14(d)(4) and Rule 14d-9 because it omits the material facts set forth above, which renders the Recommendation Statement false and/or misleading.

47. Defendants knowingly or with deliberate recklessness omitted the material information set forth above, causing statements therein to be materially incomplete and

misleading.

48. The omissions in the Recommendation Statement are material to plaintiff, and he will be deprived of his entitlement to make a fully informed decision with respect to the Proposed Transaction if such misrepresentations and omissions are not corrected prior to the expiration of the Tender Offer.

49. Plaintiff has no adequate remedy at law.

## COUNT III

**Claim Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act**

50. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Adamas within the meaning of Section 20(a) of the Exchange Act as alleged herein.

52. Due to their positions as directors of Adamas and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Recommendation Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

53. Each of the Individual Defendants was provided with or had unlimited access to copies of the Recommendation Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

54. Each of the Individual Defendants had direct and supervisory involvement in the

day-to-day operations of the Company, and, thus, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

55. The Recommendation Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly connected with and involved in the making of the Recommendation Statement.

56. Accordingly, the Individual Defendants violated Section 20(a) of the Exchange Act.

57. The Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

58. Due to their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

59. Plaintiff is threatened with irreparable harm and has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment and relief against defendants as follows:

A. Enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to file a Recommendation Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.  Declaring that defendants violated Sections 14(e), 14(d), and 20(a) of the Exchange Act and Rule 14a-9;

E.  Awarding plaintiff the costs of this action, including reasonable allowance for attorneys' and experts' fees; and

F.  Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury.

Dated: November 8, 2021

**GRABAR LAW OFFICE**

By: *[signature]*
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
267-507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*